1817.

REAM *against* The Commonwealth.

*Lancaster.*

IN ERROR.

*Monday,*
May 26.

ERROR to the Quarter Sessions of *Dauphin* county.

*Ream,* the defendant below, was indicted for forgery. The indictment contained four counts, upon the second of which he was convicted.

The second count was as follows :

And the inquest aforesaid, on their oaths and affirmations aforesaid, do further present, that the said *Henry Ream,* at the county aforesaid, on the said thirtieth day of *June,* 1814, being an evil-disposed person, and devising, designing, and intending evil to the people of this Commonwealth, under the pretext of examining the enrollments, registers, and records in the office of the surveyor general of this Commonwealth, on the thirtieth day of *June,* 1814, aforesaid, at the county aforesaid, with the intention to defraud and deceive one *George Rimmell,* falsely, deceitfully, and corruptly, in and on *a certain registry and record, then and there being, and remaining as a public record, in the office of the surveyor general* of this Commonwealth, to wit, in Book F, and on the page of the said Book, numbered one hundred and ninety-five, containing the list of returns made by him, the said *Henry Ream,* while acting as deputy surveyor of the surveyor general of this Commonwealth, did, then and there falsely alter and deface *the registry and records of said office* and of this Commonwealth, by a false and corrupt interlineation, made in writing and figures, as follows, to wit, in the said Book F, and on the page of said Book, numbered therein one hundred and ninety-five, and between the lines of writing on said page, counted from the upper line of said page, including the said upper line, numbers twenty-three and twenty-four, *April,* 1794. *Henry Ream,* in right of *Samuel Simpson,* 161 acres and 95 perches. To the great damage of the said *George Rimmell,* contrary to the act of general assembly in

An indictment charging the defendant with altering and defacing "a certain registry and record, being and remaining as a public record in the office of the surveyor general of this Commonwealth, to wit, Book F," on the page of the said book, "containing the list of returns made by the defendant, while acting as deputy surveyor," is a valid indictment for forging under the act of 1700.

Every registry or enrollment directed by law, and preserved for the use of the public is embraced by this act of assembly.

*It seems,* the books of the land office and board of property are records.

1817.       such case made and provided, and against the peace and
                dignity of the Commonwealth of *Pennsylvania*.

REAM
  *v.*
The Com-
monwealth.      The Court sentenced him to undergo a servitude for the
            term of two years, in the jail of *Dauphin* county, at hard
            labour.

      *Elder* and *Fisher*, for the plaintiff in error.
      This indictment is founded on the act of 1700, " against
" defacers of charters, &c." and to bring the offence within
that act, the book defaced or altered must be a record.  But
the book referred to in this indictment was not a record, but
a book in the office of the surveyor general, containing re-
turns made by deputy surveyors.  No act of assembly has
ever made a mere book of accounts of this kind a record.
On the contrary, an act of assembly was passed on the 19th
*March*, 1804, to make the copies of such books evidence, be-
cause the books themselves were not records.  The jury had
no right to decide by their finding, whether it was a record
or not.  If it were a record, it must be described as such in
the act of assembly making it so, if there be any such act.
An indictment for stealing a bank note was held erroneous,
because the bank note was not described in the words of the
act of assembly, declaring such offence larceny. 1 *Binn.* 120.
Nothing can be taken by intendment on an indictment.  2
*Hawk.* 324.  The rolls of the superior Courts only, are
matters of record.  *Jacob's Law Dict. Record.*  6 *Com.
Dig.* 172.

      *Irvine*, for the Commonwealth.
      Forgery consists in criminally altering any writing where-
by injury might be sustained,  2 *East's Cr. Law,* 852.  Al-
tering a parish register is forgery.  *Ib.* 859.  It is enough if
it be a document of a public nature, and forgery of such do-
cument is, by the common law, punishable with the pillory,
though they are not strictly records.  Here by the finding of
the jury, it is conclusively established, that the document al-
tered was a registry or record.

      TILGHMAN C. J.  *Henry Ream* was indicted and convicted
of the offence of altering and defacing a book of record or

registry, in the office of the surveyor general. The Court of Quarter Sessions of *Dauphin* county, before whom he was tried, sentenced him to undergo a servitude for two years in the public jail of *Dauphin* county, to be kept at hard labour, &c. The error assigned is, that the offence charged is not punishable by servitude at hard labour, &c. because it appears on the face of the indictment, that the book which was altered, or defaced, was not a record. The counsel for *Ream* seem to take it for granted, that the indictment refers to a book in the surveyor general's office, containing private accounts between the surveyor general and his deputies. What book was given in evidence on the trial, I know not, for I can know nothing out of the record. But, in the indictment, I find, that *Ream* is charged with altering and defacing " a " certain register and record, being and remaining as a pub- " lic record, in the office of the surveyor general of this " Commonwealth, to wit, Book F, &c." And in another part of the indictment it is mentioned, that this book contained the list of returns made by the said *Ream*, while acting as deputy of the surveyor general. Whether the book was a record or not, was to be tried by the jury, and they have affirmed, that it was a record. We must, therefore, take it to be so, unless none of the books in the office of the surveyor general are to be considered as public registers or records. The act of assembly against defacers of charters, &c. made in the year 1700, (on which this indictment is founded,) makes it criminal to forge, deface, or falsify any " *enrolment, registry,* or *record,* within this province or territories." These expressions are not confined to records of courts of justice. Every registry or enrolment, directed by law and preserved for the use of the public, is embraced by this act of assembly. It extends, without doubt, to the public books in the land office. These books are of a most important nature, as they contain the origin of all titles to land. Formerly they were in the custody of the proprietaries and their officers. But, since the Commonwealth became a sovereign state, the books of the land office have been committed to the charge of officers appointed under the authority of the government. By the act " for establishing a land office," &c. passed the 9th *April,* 1781, an office was created, consisting of three persons, called by the names of the secretary of the land office, the receiver general, and the sur-

veyor general, and it was directed, that into that office should be removed, and safely kept, " *all the records and papers* of " the former land office or board of property, in the hands, " custody, or possession of the late secretary, surveyor ge- " neral or receiver general, or any other person or persons, " entrusted with the care or management thereof, by or " under the late proprietary of the province of *Pennsylvania*, " &c." And it was enacted by the same law, that " *all fu-* " *ture grants and confirmations of land*, should issue from " the said office." We perceive here, that these books were considered as records by the legislature. But even supposing, that in strictness of speech, the book in question was more properly a *registry* than a *record*, it is described in the in- dictment both as a *registry* and a *record*.

I am, therefore, of opinion, that the indictment is good, and the judgment should be affirmed.

GIBSON J. concurred.

DUNCAN J. gave no opinion, having been counsel for the Commonwealth.

Judgment affirmed.